UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on July 9, 2018

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO.** |
| | : | |
| vs. | : | **Grand Jury Original** |
| | : | |
| **ELMER BAKER,** | : | **18 U.S.C. § 371** |
| | : | **(Conspiracy to Violate the Anti-Kickback Statute)** |
| Defendant. | : | |
| | : | **18 U.S.C. § 1343** |
| | : | **(Wire Fraud)** |
| | : | |
| | : | **18 U.S.C. § 2** |
| | : | **(Aiding and Abetting, Causing an Act to be Done)** |
| | : | |
| | : | **18 U.S.C. § 981(a)(1)(C) and** |
| | : | **28 U.S.C. § 2461(c)** |
| | : | **(Criminal Forfeiture)** |

## INDICTMENT

The Grand Jury charges that:

### General Allegations

At all times relevant to this Indictment:

### The Defendant and Related Individuals

1. Defendant **ELMER BAKER** was a project manager for Company A, a prime contractor. He managed the contract, GS-11P-08-MK-C-0062 ("Perimeter Hardening Contract"), which was a contract awarded to Company A for the hardening of concrete pillars at the Harry S. Truman Federal Building, a Department of State facility located at 2201 C Street, Northwest, Washington D.C. ("State Department Facility").

2. Co-Conspirator John Przybyla ("Przybyla") operated and managed Capital Contracting, Inc. ("Capital Contracting"), an Ellicott City, Maryland-based construction company, which was awarded a subcontract from Company A to perform the hardening of the concrete pillars at the State Department Facility.

<u>Perimeter Hardening Contract</u>

4. The Perimeter Hardening Contract was a sole-source, firm-fixed price contract awarded to Company A on or about December 23, 2008 for providing labor, materials, equipment, and supervision to complete the demolition, abatement, and construction services for the State Department Facility. The contract was originally awarded for approximately $12,395,075. The contract was modified approximately 33 times, which resulted in the contracted increasing in value to approximately $20,057,055.

5. Company A awarded a subcontract to Capital Contracting on or about March 17, 2009 for the performance of a portion of the construction under the prime contract, and ultimately utilized Capital Contracting as a subcontractor for hardening parking garage columns on approximately five modifications of the Perimeter Hardening Contract.

6. Under relevant federal regulations, the prime contractor and subcontractor have to furnish complete, accurate, and current pricing data with respect to any change order or modification of the contract where the value of the modification would exceed $750,000. In the context of the Perimeter Hardening Contract, accurate pricing data meant that Company A had to provide the U.S. General Services Administration ("GSA"), which administered the Perimeter Hardening Contract, the actual cost estimates furnished to the prime contractor by the subcontractor. The contract also allowed for Company A to collect 10 percent of the costs of performing the required work as overhead and profit in a separate, labeled line item. For each

applicable modification, Company A would then have to certify that it had complied with the terms and conditions of the contract for each applicable modification.

## COUNT 1
### (Conspiracy to Solicit Unlawful Kickbacks)
### [Title 18, United States Code, Section 371]

7. From in or around March 2009, and continuing until on or about September 6, 2017, in the District of Columbia, and elsewhere, the Defendant,

**ELMER BAKER,**

and others known and unknown to the grand jury, willfully, and knowingly combined, conspired, confederated and agreed to commit an offense against the United States of America, to wit, to violate Title 41, United States Code, Sections 8702 and 8707, by knowingly and willfully soliciting, accepting, and attempting to accept a kickback, that is, money, fees, commissions, credits, gifts, things of value, and compensation provided, directly and indirectly, from a subcontractor employee, Przybyla, a co-conspirator, for the purpose of improperly obtaining favorable treatment in connection with a prime contract and subcontract relating to a prime contract, in violation of Title 18, United States Code, Section 371.

<u>Manner and Means of the Conspiracy</u>

8. The manner and means by which **BAKER** and his co-conspirators carried out the conspiracy included, but were not limited to, the following:

9. In or around June 2010, and after Company A awarded the initial subcontract to Capital Contracting, Przybyla began providing meals, golf sessions, vacations, and other things of value to **BAKER** in order to receive contract modifications from **BAKER** and Company A. Many of these meals, golf sessions, and vacations involved Przybyla as well, but other times, Przybyla paid for **BAKER** to take vacations on his own. For example, in or around March 2014, Przybyla

paid for **BAKER** to travel to the Pinehurst Resort in North Carolina and golf at the resort. Przybyla also paid for **BAKER** to vacation to Pensacola, Florida.

10. Beginning in or around 2015, **BAKER** began demanding cash kickbacks from Przybyla in exchange for Capital Contracting receiving continued contract modifications. He demanded that Przybyla pay him 10 percent of value of the expected modifications.

11. In order to receive these cash kickbacks, **BAKER** created a shell company, Dolphin Consulting and Associates ("Dolphin"), in the state of Florida. **BAKER** created Dolphin for the purpose of receiving these payments and sent Capital Contracting false invoices for "project management" services performed by Dolphin on the Perimeter Hardening Contract. The purpose of these false invoices was to make the kickback payments appear legitimate.

12. **BAKER** also took steps to prevent the GSA from discovering the kickback arrangement. On or about February 12, 2016, Przybyla submitted a cost proposal for a contract modification to **BAKER**, which included a line item for $100,000 for "project management." This money was intended to cover the kickbacks that Przybyla had been paying to **BAKER** in exchange for being awarded the contract modifications. However, **BAKER** told Przybyla he did not want the kickbacks labeled as "project management" and instructed Przybyla to distribute the $100,000 among the other line items, in order for money to be harder to detect. On or about February 15, 2016, Przybyla sent **BAKER** the updated cost proposal, which did not contain the line item for project management, but instead had inflated several other line items by a total of approximately $100,000.

## Overt Acts

13. In furtherance of the conspiracy and to effect and accomplish the objects thereof, **BAKER** and his conspirators committed overt acts in the District of Columbia and elsewhere,

4

including, but not limited to, those described above as well as the following:

14. In or around March 2014, Przybyla paid for **BAKER** to travel to the Pinehurst Resort in North Carolina and golf at the resort.

15. On or about May 22, 2015, **BAKER** incorporated Dolphin in the state of Florida.

16. On or about the following dates, among others, Przybyla made kickback payments via check to Dolphin for **BAKER** in the following approximate amounts:

| Approximate Date of Payment | Approximate Amount of Payment |
|---|---|
| 6/29/2015 | $15,000 |
| 7/17/2015 | $12,250 |
| 8/10/2015 | $13,125 |
| 9/30/2015 | $12,875 |
| 11/11/2015 | $6,250 |
| 12/23/2015 | $7,125 |
| 12/23/2015 | $6,075 |
| 2/24/2016 | $13,375 |
| 3/21/2016 | $12,625 |
| 12/7/2016 | $24,750 |
| 12/28/2016 | $15,000 |
| 2/6/2017 | $15,000 |
| 3/28/2017 | $14,375 |
| 4/19/2017 | $15,000 |
| 5/9/2017 | $14,750 |

| Approximate Date of Payment | Approximate Amount of Payment |
|---|---|
| 7/10/2017 | $14,750 |
| 7/24/2017 | $15,000 |
| 8/3/2017 | $14,750 |

(All in violation of Title 18, United States Code, Section 371)

## COUNTS 2-5
### (Wire Fraud)
### [Title 18, United States Code, Sections 1342 and 2]

17. Paragraphs 1 through 6 of this Indictment are incorporated by reference as though set forth fully herein.

18. Beginning in or around June 2010 and continuing until in or around August 2017, as specified in each count below, in the District of Columbia and elsewhere, the Defendant,

**ELMER BAKER**,

together with others known and unknown to the Grand Jury, did knowingly, and with intent to defraud, devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, knowing that such pretenses, representations, and promises were false and fraudulent when made, and did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme and artifice.

Purpose of the Scheme to Defraud

19. The purpose of the scheme and artifice was for **BAKER** to unlawfully earn compensation for himself by defrauding the GSA through the submission of false and fraudulent

contract modifications to the GSA, which overstated the costs associated with each of the modifications.

### Scheme and Artifice

20. The scheme and artifice executed by **BAKER** included, but was not limited to, the following:

21. When additional work was needed on the State Department Facility, **BAKER** would obtain a cost worksheet from Przybyla, listing the costs that Przybyla would incur performing the needed work on the State Department Facility, in order to submit a proposed contract modification to the GSA.

22. Under the terms of the Perimeter Hardening Contract, **BAKER** was required to transmit Capital Contracting's costs as estimated by Przybyla without any markup to the GSA. However, on each of the contract modifications, **BAKER** inflated the contract costs without telling Przybyla, ensuring that the additional money would flow back to Company A. Additionally, **BAKER** certified that he had complied with the requirements of the contract, when he had in fact not complied.

23. Upon providing his inflated cost estimates to the GSA, **BAKER** caused the certifications and requests for payment on the fraudulent contract modifications to be transmitted by email from the GSA National Capital Region Regional Office Building, located in the District of Columbia to servers located outside of the District of Columbia.

### Use of Wires

24. On or about the dates set forth below, in the District of Columbia, and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and

promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, the Defendant did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communications, certain writings, signs, signals, and sounds, as set forth in each count below:

| Count | Approximate Date | Description of Wire Communication |
|---|---|---|
| 2 | 10/28/2015 | **BAKER** caused GSA Employee #1 to electronically transmit Company A Payment Application #41 from the District of Columbia to servers located outside the District of Columbia. In this application **BAKER** falsely certified that he followed all the applicable rules and regulations associated with the Perimeter Hardening Contract and its modifications. |
| 3 | 8/9/2016 | **BAKER** caused GSA Employee #2 to electronically transmit Company A Payment Application #43 from the District of Columbia to servers located outside the District of Columbia. In this application **BAKER** falsely certified that he followed all the applicable rules and regulations associated with the Perimeter Hardening Contract and its modifications. |
| 4 | 11/10/2016 | **BAKER** caused GSA Employee #2 to electronically transmit Company A Payment Application #44 from the District of Columbia to servers located outside the District of Columbia. In this application **BAKER** falsely certified that he followed all the applicable rules and regulations associated with the Perimeter Hardening Contract and its modifications. |
| 5 | 2/6/2017 | **BAKER** caused GSA Employee #1 to electronically transmit Company A Payment Application #46 from the District of Columbia to servers located outside the District of Columbia. In this application **BAKER** falsely certified that he followed all the applicable rules and regulations associated with the Perimeter Hardening Contract and its modifications. |

(All in violation of Title 18, United States Code, Section 1343)

## FORFEITURE ALLEGATIONS
## [18 U.S.C. § 981(a)(1)(C)]

1. The General Allegations and the allegations of Counts 2 through 5 in this Indictment are re-alleged and incorporated fully herein by reference for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **ELMER BAKER ("BAKER")** has an interest.

2. Upon conviction of any violation of Title 18, United States Code, Section 1343, as alleged in Counts 2 through 5 of this Indictment, **BAKER** shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

3. The property subject to forfeiture includes, but is not limited to, approximately $690,000, which represents a sum of money derived from the commission of the alleged wire fraud offenses.

4. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant, up to the value of the above forfeitable property, and in addition, to require the defendant to return any such property to the jurisdiction of the court for seizure and forfeiture.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c), and the procedures set forth in Title 21, United States Code, Section 853.

A TRUE BILL

_____
FOREPERSON

ROBERT ZINK
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
UNITED STATES DEPARTMENT OF JUSTICE

By: _____
VASANTH SRIDHARAN
TRIAL ATTORNEY, FRAUD SECTION